AMANDA C. LOWE *v.* ALABAMA & VICKSBURG RAILWAY COMPANY.

RAILROADS, *Live stock on or near track. Evidence. Code* 1892, § 1808. "*Cul de sac*" cases.

Where a horse became frightened by a railroad train and ran along, parallel to the road, at the foot of an embankment upon which the train was passing, and because of the emission of steam from the locomotive suddenly turns from its course, along which it could have safely passed, and falls or jumps into a ditch, inflicting upon itself fatal injuries—

(a) The case is not within Code 1892, § 1808, making proof of injury by the running of railroad locomotives or cars *prima facie* evidence of the want of reasonable skill and care on the part of the servants of the railroad company in reference to such injury;

(b) The "*cul de sac*" cases have no application; and,

(c) Without evidence to show willfulness, wantonness or lack of reasonable care on the part of the servants of the railroad company it is not liable, and a peremptory instruction for it is proper.

FROM the circuit court of Lauderdale county.
HON. GUION Q. HALL, Judge.

Mrs. Lowe, appellant, was plaintiff in the court below; the railway company, appellee, was defendant there.

A train of railway cars was passing along appellee's track upon a fill, or dump, at least ten or twelve feet high, when a horse belonging to the plaintiff, being frightened thereby, ran at the foot of the dump, and, of course, below the train, parallel with the railroad. A ditch extended diagonally to the railroad, coming nearer to the dump as it approached the point where it passed under the track. There was a ford, or path, across the ditch quite near the foot of the railroad embankment. The horse, apparently, intended to cross the ditch at this ford, or path, which it could have done with safety, but when it reached a point near the ford, and between the railroad embankment and the ditch, suddenly wheeled and fell, or jumped into the ditch and broke its neck. The locomotive or cars of defendant did not strike it; but appellant showed that the engineer opened the cocks on his engine, allowing steam to escape, and thereby startled the animal and caused it to jump into the ditch to its destruction. The court below gave a peremptory instruction for the defendant, and the plaintiff appealed to the supreme court.

*F. V. Brahan,* for appellant.

The court erred in granting the peremptory instruction, as asked by defendant, and in refusing the instruction as asked by plaintiff. I rely on the case of *New Orleans, etc., R. R. Co.* v. *Thornton,* 65 Miss., 256, for a reversal of this case. Undoubtedly a railroad company may incur responsibility for injuries to a horse not struck by the train, where some wrong is done by its servants.

The testimony in this case is quite different from the *Thornton case,* and I submit that from the testimony of Hughey, the wrongful and apparent willful act of the engineer in enveloping the horse with steam, was the cause of his death, and the defendant is liable. At any rate, in view of the conflicting testi-

mony of plaintiff's and defendant's witnesses, saying nothing about the irreconcilable statements of defendant's own witnesses, the case should have gone to the jury on the theory of plaintiff's refused instruction.

Hughey testified that the steam completely enveloped the horse, and caused him to jump and break his neck, and the defendant's witnesses denied that the steam ever reached the horse, but stated the engine was three hundred and fifty to five hundred feet from, and past the horse, when the steam was discharged.

The engineer in charge of the train admitted seeing the horse running before he came up with it and passed it, and it was his duty to have kept a lookout for the horse, and the horse was in a few feet of the ford, where he was proceeding to cross the ditch and escape danger, when the engineer "opened the cocks" on him and made him leap to his destruction.

As against this view, we have the defendant's absurd view, that the horse, though within a few feet of the crossing, waited until the train had passed him three hundred and fifty to five hundred feet, and seeing the steam discharged, committed suicide without any provocation whatever.

*McWillie & Thompson,* for appellee.

This case does not fall within the provisions of code, 1892, § 1808, making the infliction of injury to persons or property by the running of railroad locomotives or cars *prima facie* evidence of the want of reasonable skill and care on the part of the servants of the company in reference to such injury. The case is clearly without the terms of the statute, and the burden of proof is on the plaintiff to make out her case and to show that defendant's servants did not exercise reasonable care, etc. *Illinois, etc., R. R. Co.* v. *Weatherby,* 63 Miss., 581.

Hughey, the witness upon whose testimony the appellant relies, was one hundred yards away from the scene of the accident. He says that when the engine "got up" with the horse

they (meaning the engineer) let the steam on him from the engine, "and it whirled," and he guessed the horse turned and jumped into the ditch. The witness' view was obstructed by steam; nevertheless, he claims that the horse was covered by it. Aside from the apparent difficulty of the steam being thrown down from the elevated track on which the engine was passing and striking the horse (and the court will take judicial notice of natural laws), it is manifest that the witness could not have known what he stated to be true. But assuming the truth of his statements, he further tells us that he does not know why the steam was blown out from the engine, and the only conflict between his version of affairs and the testimony of the engineer is in respect to whether the steam was emitted when the engine was just opposite (and, of course, above) the horse, as Hughey states, or after the engine had passed the horse, as sworn by the defendant's witness.

The railway company had the right to run its train, it had the right to open the cocks on the engine asd allow water or steam to escape. It is not shown to have done anything more than this, nor is it shown that the cocks were unnecessarily opened, or that they were opened and the steam emitted for the purpose of frightening the horse, or that a natural and probable result of the emission of steam at the time and place under consideration would be to cause the horse to jump into the ditch.

Assume, what Hughey states, that the cocks were opened when the engine was opposite and above the horse, and it in no way contradicts the engineer's testimony that he opened them in the natural and ordinary course or driving the engine, and without thought of the horse.

Certainly one of two things had to be shown before the plaintiff was entitled to recover. She must have shown, first, that the servant of the defendant willfully opened the valves for the purpose of frightening the horse, in which case, under modern doctrines, she could recover; or, second, that it was negligence on his part to have opened them under the circumstances

then surrounding him. Neither of those things was shown, and the testimony did not tend to show either. It merely appears, considering the evidence most favorable to plaintiff, that the cocks were opened and steam emitted when the horse was near the engine. To so open the cocks was not a mismanagement of the train. Was it a wrong to the plaintiff? This takes us, assuming that the engineer saw the animal and was conscious of its surroundings, into the question of probable consequences of the act. Could any man be held to know that the emission of steam from the cocks of an engine, several feet from and above a horse, would likely cause the animal to break its neck by jumping into a ditch? Its jumping into a ditch, running parallel to its path, was not reasonably to be anticipated to result from the emission of steam. It was not in a *cul de sac*. But, assuming that the jumping into the ditch might have been anticipated, who would expect fatal consequences to follow? There is nothing in the records to show the size or character of the ditch. Suppose a horse is running down the street, and a person, even intentionally, does something to cause, and which causes, him to change his course, and he runs against a post, or jumps into a ditch, whereby he is killed, is the person liable to the owner? Most certainly not. The peremptory instruction for defendant was correctly given; the death of the horse was the result of a pure accident.

CALHOON, J., delivered the opinion of the court.

This case does not fall within the provisions of code, 1892, § 1808, in reference to injuries "inflicted by the running of locomotives or cars." The horse was not killed by such running, but was off the track, and, from fright, left its path of safety, fell in a ditch, and broke its neck—a curious result, which no one could have foreseen or reasonably apprehended. *Illinois, etc., R. R. Co.* v. *Weathersby,* 63 Miss., 581; *New Orleans, etc., R. R. Co.* v. *Thornton,* 65 Miss., 256; *Mobile, etc., R. R. Co.* v. *Holt,* 62 Miss., 170.

Since code, § 1808, cannot be invoked by the plaintiff, the burden of proof was on her to show willfulness, wantonness, or lack of such reasonable care on the part of the engineer as the position of the horse apparently demanded to prevent obvious danger. This, we think, she has not done. The horse was at the foot of an embankment, ten or twelve feet below the moving engine, and in a perfectly safe pathway, with a safe egress, when the steam was emitted. It cannot be assumed, and especially in the face of evidence to the contrary, that the emission had reference to the animal. It is not even shown that the ditch was of such dimensions as to indicate danger. The *cul de sac* cases have no bearing, because here there was a plain mode of escape, and the killing was not done on the track. Surely a railroad cannot be held liable for emitting steam in the usual management of an engine because it frightened a horse ten feet below, from which fright it jumped in a ditch and broke its neck.

*Affirmed.*

